**In re Carl Philip THORSELL Debtor**

**Thomas A. Dorey, Trustee, Plaintiff,**

**v.**

**Carl Philip Thorsell; M & T Bank; Chrysler Financial Corporation, Defendants.**

No. 97–13949 B.
Adversary No. 97–1325 B.

United States Bankruptcy Court,
W.D. New York.

Jan. 5, 1999.

---

Thomas A. Dorey, Jamestown, NY, for Plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear LLP, Peter A. Muth, of counsel, Buffalo, NY, for Defendant.

CARL L. BUCKI, Bankruptcy Judge.

As a condition for perfection of an automobile lien in New York State, must the certificate of title recite the name of the correct lienor? This issue underlies the position of the Chapter 7 trustee, who seeks to avoid a purported security interest that impairs an asset of the bankruptcy estate.

Carl Philip Thorsell, the debtor herein, purchased a 1993 Lincoln Continental on November 26, 1996. To finance this acquisition, Thorsell executed a retail installment sales contract with the Manufacturers and Traders Trust Company ("M & T"). Pursuant to

paragraph 5 of that contract, Thorsell granted to M & T a security interest in the automobile. Promptly thereafter, M & T submitted to the Department of Motor Vehicles the required application for a certificate of title with designation of M & T as lien holder. Although M & T performed all of the steps required for issuance of the desired certificate of title, someone at the Department of Motor Vehicles inserted an incorrect code into the agency's computer. As a consequence, the department issued a certificate which identified the lien holder not as M & T, but as Chrysler Financial Corporation. M & T took no steps to correct the title certificate as of June 23, 1997, when Thorsell filed his petition for relief under Chapter 7 of the Bankruptcy Code. As trustee for this case, Thomas Dorey thereafter commenced the present adversary proceeding to avoid any security interests of Chrysler Financial and M & T. Chrysler Financial has defaulted, while the trustee and M & T have cross moved for summary judgment.

Article 46 of the New York Vehicle and Traffic Law establishes the requirements for perfection of a security interest in a motor vehicle of the type owned by the debtor. Section 2118(a) of this statute states generally that no security interest in a motor vehicle is valid "unless perfected as provided in this section." The usual rules for perfection are then set forth in section 2118(b)(1), as follows:

A security interest is perfected:

(A) by the delivery to the commissioner of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee;

(B) As of the time of its creation if the delivery is completed within ten days thereafter, otherwise, as of the time of delivery.

Having delivered to the commissioner all of the items identified in part A of subdivision (b)(1), M & T contends that its lien is fully perfected without more. The trustee disagrees. Citing *General Motors Acceptance Corp. v. Waligora,* 24 B.R. 905 (W.D.N.Y. 1982), he asserts that perfection further re-

quires an identification of the lienholder on the certificate of title.

The District Court for the Western District of New York has twice interpreted the perfection requirements of Vehicle and Traffic Law § 2118. In arguing the present motions for summary judgment, the parties have assumed an inherent conflict between the decisions in *General Motors Acceptance Corp. v. Waligora,* and *Lucas v. Pennbank,* 142 B.R. 68 (1992). A closer reading of these cases, however, shows that the district court specifically avoided any inconsistency of result.

In *Waligora,* debtors in a Chapter 7 proceeding had granted a pre-petition security interest in their automobile to General Motors Acceptance Corp. ("GMAC"). Although the title application listed GMAC as the secured party and although the requisite fee was paid, the Department of Motor Vehicles issued a title that contained a blank in the space reserved for the name of the lienholder. In affirming a bankruptcy court decision that disallowed the secured claim of GMAC, Judge John T. Elfvin acknowledged that on its face, subdivision (b)(1)(A) indicates that mere delivery of the specified items to the Commissioner of Motor Vehicles "is sufficient to perfect the lien, notwithstanding that the certificate of title which thereafter issued failed to list the lienholder." 24 B.R. at 907. Contradicting this interpretation, however, were statutory provisions that required the certificate of title to identify the lienholder, N.Y. Vehicle and Traffic Law § 2108(a)(3); that allowed a lienholder to itself notify the commissioner of its lien, N.Y. Vehicle and Traffic Law § 2118(b)(2)(B) and § 2119(b); that allowed a lienholder to seek a correction of a defective title, N.Y. Vehicle and Traffic Law § 2127; and that required the commissioner to "issue and mail to the lienholder ... a notice of recorded lien," N.Y. Vehicle and Traffic Law § 2107(c). The court reasoned that "[t]aken together, these provisions indicate that a security interest in a motor vehicle subject to Article 46 is not perfected unless the security interest is properly noted on the certificate of title." 24 B.R. at 907.

*Lucas v. Pennbank,* 142 B.R. 68 (1992) provided the second opportunity for the Dis-

trict Court for the Western District of New York to interpret section 2118 of the Vehicle and Traffic Law. As in *Waligora*, the Department of Motor Vehicles had received all of the documents and fees that New York law required for perfection of a lien. Again, the department issued a certificate of title that erroneously failed to list the lienor. In this case, however, the Department of Motor Vehicles was made aware of its oversight, and issued a letter directing the owners to return the certificate of title so that a corrected title might be issued. The owners failed to respond to these instructions, but instead filed a petition for relief under Chapter 13 of the Bankruptcy Code. Relying on the decision in *Waligora*, the bankruptcy court disallowed the lien. On appeal, the district court reversed. Judge John T. Curtin noted "the plain statutory language," 142 B.R. at 71, but found it unnecessary to address the potential conflict between *Waligora* and a contrary state court decision in *Fitzpatrick v. Bank of New York, discussed infra*. Rather, *Lucas v. Pennbank* distinguished *Waligora*. Finding that the debtors "had 'unclean hands' at the time of the bankruptcy filing due to their failure to return the erroneous certificate of title," 142 B.R. at 71, Judge Curtin resolved not to penalize the lienor for the debtor's failure to act.

In the present instance, M & T has yet to direct the court's attention to any improper conduct by Thorsell. Accordingly, the distinguishing events in *Lucas v. Pennbank* have no obvious relevance. Thus, the parties have argued the issue that the court in *Lucas* did not reach, namely whether the decision in *Waligora* continues to be an accurate statement of New York law.

*Waligora* appears to have been a matter of first impression. Since that decision, all of the few reported cases have reached a contrary conclusion. The chief of these is *Fitzpatrick v. Bank of New York*, 124 Misc.2d 732, 480 N.Y.S.2d 157 (N.Y.Sup.App.Term, 1983), *rev'g* 118 Misc.2d 771, 461 N.Y.S.2d 703 (N.Y.Civ.Ct.1983). Fitzpatrick, the plaintiff in that proceeding, had acquired an interest in a motor vehicle from someone who had purchased the car at an auction conducted to satisfy a judgment for unpaid parking

tickets. The original owner had previously given a security interest to the Bank of New York, and the Bank of New York had completed the steps required under New York law to perfect its lien. Nonetheless, the Department of Motor Vehicles had issued to the auction purchaser a certificate of title without any notation of a security interest. Thereafter, the department issued another clean title to Fitzpatrick. When the Bank of New York then seized its collateral, Fitzpatrick commenced an action to recover the automobile. On cross motions for summary judgment, the civil court for Queens County ruled in favor of the lienholder. It held that the certificate of title constituted only *prima facie* evidence of ownership, and that no unilateral action by the Department of Motor Vehicles could release a lien that the creditor had properly perfected under Vehicle and Traffic Law § 2118. On appeal, the Appellate Term identified defects in the notice of the secured creditor's sale, and accordingly reversed. It found, however, that "[t]he court below correctly concluded that defendant had the right to take possession of the collateral pursuant to its perfected security interest regardless of the administrative negligence of the Department of Motor Vehicles." 124 Misc.2d at 733, 480 N.Y.S.2d 157. In the view of the Appellate Term, pursuant to Vehicle and Traffic Law § 2118, subd [a], "[a] perfected security interest takes priority over a purchaser of the collateral, even though that purchaser is without knowledge of the lien." 124 Misc.2d at 732.

In the context of motions for relief from the automatic stay of 11 U.S.C. § 362, bankruptcy courts from two other districts have considered whether the New York Vehicle and Traffic Law mandates an identification of the lienholder on the certificate of title as a condition for lien perfection. Answering in the negative, both courts concluded that perfection requires only the delivery of those items listed in subdivision (b) of section 2118 of that statute. In *In re Microband Companies*, 135 B.R. 2, 5 (Bankr.S.D.N.Y.1991), the court acknowledged that it was

aware of *General Motors Acceptance Corporation v. Waligora*, which held to the contrary. While we are not bound by precedent from the Western District of New

York, we also believe that the decision ignores the plain intent of New York's motor vehicle laws.

Similarly, in *In re Beaudoin,* 160 B.R. 25, 30 (Bankr.N.D.N.Y.1993), the court specifically rejected the *Waligora* holding, and noted that that decision "has found no support in the published decisions of the courts of New York."

■ This court is obliged to apply state law with respect to substantive issues other than those which federal statutes, treaties, and the Constitution may define. Indeed, in numerous respects, the Bankruptcy Code presumes reliance upon state standards, especially with respect to determinations of liability and the delineation of property interests. Courts have particularly recognized that within bankruptcy, questions of lien perfection are matters of state law. Thus, in *Thompson v. Fairbanks,* 196 U.S. 516, 522, 25 S.Ct. 306, 49 L.Ed. 577 (1905), the Supreme Court held that the validity of a mortgage lien "is a local question, and the decisions of the state court will by followed by this court in such case." Similarly, with respect to personalty, the Supreme Court has ruled "that the effect to be given to the unrecorded chattel mortgage must be determined by the recording law of the state." *Holt v. Crucible Steel Co.,* 224 U.S. 262, 265, 32 S.Ct. 414, 56 L.Ed. 756 (1912). *Accord, Corn Exchange National Bank and Trust Company v. Klauder,* 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943).

■ The New York Vehicle and Traffic Law is a state statute whose interpretation is ultimately the prerogative of the courts of New York State. Thus, federal courts must honor a definitive pronouncement of that law by New York State's highest tribunal, the Court of Appeals. As to issues on which the New York Court of Appeals has made no such definitive ruling, federal courts must aim to predict the state court's likely interpretation of the statute. Our function is not so much to determine the statute's proper meaning, as it is to discern the interpretation that a state court would most likely adopt. For such guidance, the bankruptcy court must duly recognize the persuasive authority of decisions of the state's inferior courts. In

*In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 850 (1992), the Second Circuit Court of Appeals summarized the appropriate standard.

A federal court faced with a question of unsettled state law must do its best to guess how the state court of last resort would decide the issue. Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts.

■ This judge concurs fully with the decision in *In re Phipps,* 217 B.R. 427 (Bankr.W.D.N.Y.1998), which held under principles of *stare decisis* that a decision of the district court will bind all bankruptcy courts for that same district. The scope of *stare decisis,* however, reaches only as far as the matter at issue in the earlier case. When the issue is a federal question, the district court's decision is a binding determination of the law that the bankruptcy court must thereafter apply until either the district or higher court rules to the contrary. When the issue is a matter of state law, the district court's decision is a prediction of the likely outcome in state court. If the same issue were then to arise without benefit of any intervening indication of the inclination of state courts, the bankruptcy court would be obliged to follow the district court's decision. But when an intermediate state court does render a contrary decision, to what extent may a bankruptcy court revisit the subject?

When the district court rendered the decision in *Waligora,* the issue was to predict how a state court, *as a matter of first impression,* was most likely to interpret section 2118 of the Vehicle and Traffic Law. The essence of M & T's argument is that the present proceeding poses a different issue, namely to predict how a state court, *in light of recent state court precedent,* is today likely to interpret this same statutory language.

This court is mindful of the decision in *West v. American Telephone & Telegraph Company,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), in which the Supreme Court ruled that federal courts are obliged "in every case to ascertain from all the available data what the state law is and apply it

rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts." *Id.* at 237. Perhaps, in a different case, we might need to consider whether the holding of *Waligora* continues as binding precedent in light of the decision in *Fitzpatrick v. Bank of New York.* Both parties err, however, in presuming that either case has controlling application to the present circumstances. Because the facts are notably distinguishable from those in *Waligora,* we need not reconsider the holding of that case at this time.

 *Waligora* and *Fitzpatrick* involved certificates of title that lacked any reference to the identity of a lienholder. In contrast, the title in the present instance explicitly indicates the existence of a lien, although in the name of an incorrect party. Thus avoided is a critical concern of the district court in *Waligora,* that protection be afforded to prospective purchasers who rely upon information in the certificate of title. As noted by Judge Elfvin,

> Article 46 [of the Vehicle and Traffic Law] is intended to provide for the orderly transfer of motor vehicles and to protect purchasers as well as lenders. Under Article 46 a purchaser should be able to determine whether there are any outstanding liens on the automobile merely by examining the face of the certificate of title without referring to a central filing repository.

*General Motors Acceptance Corp. v. Waligora,* 24 B.R. at 908 (citation omitted). Thorsell's certificate of title fulfilled this purpose, by advising all interested parties that some lien encumbered the automobile. During the process of transferring title, a purchaser would therefore have had reason to inquire about the lien and about the correct identity and address of the lien holder.

To the Commissioner of Motor Vehicles, M & T delivered each of the items whose submission is required as a condition for lien perfection. Under the rationale of *Fitzpatrick v. Bank of New York,* therefore, M & T has fulfilled the technical requirements of an enforceable security interest. Unlike the circumstances in *Waligora,* the certificate of title also satisfies the Vehicle and Traffic Law's underlying purpose, namely to provide adequate notice to both prospective lienors and potential purchasers. While the recordation of M & T's lien may be less than perfect, the adequacy of its notice nonetheless justifies a finding of perfection. For these reasons, the court believes that the New York Court of Appeals would conclude that M & T holds a valid and perfected security interest in Thorsell's automobile.

Based on the foregoing, this Court will grant the defendant's motion for summary judgment and will deny the trustee's cross motion for the same relief.

So ordered.